UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| LESLIE TORGERSON,<br><br>      Plaintiff,<br><br>v.<br><br>ROBERTS COUNTY, SOUTH DAKOTA, TYLER APPEL, in his individual and official capacity, ZACHARY ANGERHOFER, in his individual and official capacity, WESLEY BOWSHER, in his individual and official capacity, ROSS TORGERSON, and TERRI TORGERSON,<br><br>      Defendants. | 1:22-cv- 1008<br><br><br>**COMPLAINT** |

For his Complaint against the Defendants, the Plaintiff states as follows:

## GENERAL INTRODUCTION

1.      This is an action seeking money damages under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 for Defendants' violations of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, and for Defendants' civil conspiracy to deprive Plaintiff of his civil rights.

2.      This action also states common law battery and intentional infliction of emotional distress claims pursuant to South Dakota law against Ross Torgerson, Terri Torgerson, Zachary Angerhofer and Wesley Bowsher.

3.      On September 21, 2021, Defendants Ross Torgerson, Terri Torgerson, Zachary Angerhofer and Wesley Bowsher engaged in actions which resulted in the denial of due process of law for Plaintiff by interfering with his rights to due process of law, thereby violating his rights

under the Fifth Amendment to the United States Constitution, as made applicable to the States by the Fourteenth Amendment.

4.    Defendants Tyler Appel, Angerhofer and Bowsher violated Plaintiff's constitutional rights because of, *inter alia*, the policies or customs of the Roberts County and the Roberts County Sheriff's Department under the supervision of Sheriff Tyler Appel and the Roberts County Commission.

5.    On September 21, 2021, Defendant Ross Torgerson committed a common law battery against Plaintiff by severely beating Plaintiff in Plaintiff's home.

6.    Defendants Tyler Appel, Angerhofer and Bowsher breached their duty of reasonable care by (1) investigating and reporting Ross Torgerson's battery upon Plaintiff, in an unconstitutional manner, in violation of Plaintiff's liberty interests, (2) failing to render aid to Plaintiff, and (3) failing to ensure that Plaintiff received proper medical care.  They also conspired with Terri and Ross Torgerson to deny Plaintiff his constitutional right to due process.  This combination of intentional acts was an intentional infliction of emotional distress under South Dakota law.

**PARTIES**

**Plaintiff:  Leslie Torgerson**

7.    Plaintiff Leslie Torgerson is a resident of Sisseton, South Dakota.  He is a United States citizen.

8.    Mr. Torgerson is currently staying in a residence not his home due to Defendants' conspiracy.

**Defendant:  Roberts County**

9.    Defendant Roberts County is a corporate entity duly organized and existing under the Constitution and laws of the State of South Dakota.

10.    Roberts County Sheriff's Department is a local government entity and an agency of Defendant Roberts County and all actions of the Sheriff's Department are the legal responsibility of Roberts County.

11.    Roberts County is sued in its own right on the basis of its policies, customs, and practices which gave rise to Plaintiff's federal claims.

### Defendant:  Sheriff Tyler Appel

12.    Sheriff Appel has been the Roberts County Sheriff since 2020.

13.    Sheriff Appel is the Roberts County official making the final policies with regard to law enforcement investigations and arrests in Roberts County.

14.    Under South Dakota law, a county sheriff has final policy making authority in the area of law enforcement investigations and arrests.  Sheriffs represent their county when acting in a law enforcement capacity, as shown by:

(a)    The sheriff shall keep the peace, pursue and apprehend all felons, and execute all writs, warrants, and other process within the county.  SDCL 7-12-1.

(b)    The sheriff must maintain his office at the county seat.  SDCL 7-12-2.

(c)    The sheriff shall attend sessions of the board of county commissioners when required by the board to attend.  SDCL 7-12-3.

(d)    The county board of commissioners fixes the number of deputies and jailers, determines their compensation, and pays the compensation out of county funds.  SDCL 7-12-9.

(e)    The sheriff shall be responsible for the acts of each such deputy, jailer and clerks in the performance of the duties of his office and may summarily remove them.  SDCL 7-12-11.

     (f)    The sheriff's vehicles and equipment may be provided by the county.  SDCL 7-12-12.

     (g)    All judgments rendered against the sheriff, deputies and clerks by reason of the performance of their official duties shall be paid by the county.  SDCL 7-12-26.

     (h)    An elected Sheriff is required by SDCL 23-3-42 to meet the qualifications mandated by SDCL 23-3-42.

15.    An unconstitutional governmental policy can be inferred from a single decision taken by the highest official responsible for setting policy in that area of the government's business.

16.    Defendant Appel is sued both in his individual and official capacity.

17.    For purposes of Plaintiff's claims under 42 U.S.C. § 1983 and § 1985, Defendant Appel is sued in his *individual* capacity.  While Plaintiff also faults Defendant Appel for the actions performed in his *official* capacity, these harms are imputed to Roberts County and needed not be realleged.

18.    For purposes of Plaintiff's claims under 42 U.S.C. § 1983 and § 1985 against Roberts County, Defendant Appel is sued in his *official* capacity.

19.    At all relevant times alleged in this Complaint, Defendant Appel was acting under color of state law.

20.    The practices, policies, and customs of Roberts County and its Sheriff's Department caused the unlawful actions taken against Plaintiff by Deputy Angerhofer and by Deputy Bowsher.

21.    Defendant Appel, in addition to the other named Defendants, is factually and proximately responsible for the damages and injuries alleged herein, except for battery damages.

**Defendant:  Roberts County Deputy Zachary Angerhofer**

22.    Deputy Angerhofer was the agent, servant, and employee of Defendant Roberts

County and its Sheriff's Department, at all times material alleged in this Complaint.

23.    Defendant Angerhofer is sued both in his individual and official capacity.

24.    For purposes of Plaintiff's claims under 42 U.S.C. § 1983 and § 1985, Defendant Angerhofer is sued in his *individual* capacity.  While Plaintiff also faults Defendant Angerhofer for the actions performed in his *official* capacity, these harms are imputed to Roberts County and needed not be realleged.

25.    For purposes of Plaintiff's claims under 42 U.S.C. § 1983 and § 1985 against Roberts County, Defendant Angerhofer is sued in his *official* capacity.

26.    For purposes of Plaintiff's state law claim, for intentional infliction of emotional distress, Defendant Angerhofer is sued in his *official* capacity only.

27.    Defendant Angerhofer, in addition to the other named Defendants, is factually and proximately responsible for the damages and injuries alleged herein, except the battery damages.

28.    Defendant Angerhofer was the agent, servant, and employee of Roberts County and was acting at all times within the scope of his agency and employment and with the knowledge and consent of his principal and employer.

29.    At all relevant times, Defendant Angerhofer was acting under color of state law.

30.    The practices, policies, and customs of Roberts County and its Sheriff's Department caused the unlawful actions taken against Plaintiff by Deputy Angerhofer.

**Defendant:  Roberts County Deputy Wesley Bowsher**

31.    Deputy Bowsher was the agent, servant, and employee of Defendant Roberts County and/or the Sherriff's Department at all times relevant to this Complaint.

32.    Defendant Bowsher is sued both in his individual and official capacity.

33.    Defendant Bowsher, in addition to the other named Defendants, is factually and proximately responsible for the damages and injuries alleged herein, except the battery damages.

34.     For purposes of Plaintiff's claims under 42 U.S.C. § 1983 and § 1985, Defendant Bowsher is sued in his *individual* capacity.  While Plaintiff also faults Defendant Bowsher or the actions performed in his *official* capacity, these harms are imputed to Roberts County and needed not be realleged.

35.     For purposes of Plaintiff's claims under 42 U.S.C. § 1983 and § 1985 against Roberts County, Defendant Bowsher is sued in his *official* capacity.

36.     For purposes of Plaintiff's state law claim, for intentional infliction of emotional distress, Defendant Bowsher is sued in his *official* capacity only.

37.     At all times relevant hereto, Defendant Bowsher was the agent, servant, and employee of Defendant Roberts County and was acting at all times within the scope of his agency and employment and with the knowledge and consent of his principal and employer.

38.     At all relevant times, Defendant Bowsher was acting under color of state law.

39.     The practices, policies and customs of Roberts County and its Sheriff's Department caused the unlawful actions taken against Plaintiff by Deputy Bowsher.

**Defendant:  Ross Torgerson**

40.     Defendant Ross Torgerson is the son of Terri Torgerson, the adopted son of Plaintiff and a best friend of Sheriff Tyler Appel.

41.     Prior to the events described in this Complaint, Ross Torgerson served as a Tribal policeman for the Sisseton-Wapheton Tribe, for 10 years.  He is a resident of Sisseton, South Dakota.

42.     Defendant Ross Torgerson is factually and proximately responsible for all of Plaintiff's damages and injuries alleged herein.

**Defendant:  Terri Torgerson**

43.     Defendant Terri Torgerson was, in 2021, the wife of Plaintiff, and the mother of

Ross Torgerson.  She is a resident of Sisseton, South Dakota.

44.    For a number of years, Terri and Leslie Torgerson have been Taco John's franchisees for a Taco John's in Montana.  Although named as the owner, Terri has had little management involvement.  Instead, Plaintiff has been the active manager, and has largely managed the business from his home office in South Dakota.

45.    Defendant Terri Torgerson is factually and proximately responsible for all of Plaintiff's damages and injuries alleged herein, except battery damages.

## JURISDICTION AND VENUE

46.    The Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (civil rights jurisdiction), and 42 U.S.C. §§ 1983, 1985, and 1988. Supplemental jurisdiction over the state claims is appropriate as the events in question "derive from a common nucleus of operative fact."  28 U.S.C. §1367; *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

47.    Venue properly lies in the District of South Dakota, Northern Division, under 28 U.S.C. §1391(e)(1) because all the events giving rise to this claim occurred in this district and division, all Defendants reside in this district, and no real property is involved in this action.

## FACTUAL BACKGROUND

48.    On the evening of September 21, 2021, Terri Torgerson returned home at approximately 6:40 p.m. and told Plaintiff she had asked Ross to come up to the house, "to clear the air".  Terri had gone to town to pick up the mail and to deliver a document from Plaintiff to Ross for him to review and sign.  Ross and Plaintiff had just finished texting and calling each other about buying Cowboys/Vikings tickets for October 31, 2021.  Plaintiff's phone shows the last text between Ross and Plaintiff was 6:39 p.m.  Plaintiff asked Terri if Ross had the signed document from Plaintiff and she said, "I don't know."

7

49.     About 6:55 p.m., Ross came up to the home of Plaintiff and Terri, and opened a beer for himself and poured a glass of wine for Terri. Ross then sat down next to Terri on the larger couch.

50.     It was immediately obvious Ross was intoxicated and he contradicted Plaintiff's recollection of a previous trip to Minneapolis.

51.     Plaintiff stood up from the lazy boy he had been sitting in, about six feet from the couch where Ross and Terri were sitting together. Plaintiff pointed to the door to his left and told Ross to get out of the house, because he had been drinking. Ross immediately jumped up, spilled his beer, and charged Plaintiff. Plaintiff did not defend himself, but quickly realized that Ross could push them right through the big bay window directly behind Plaintiff.

52.     To avoid going through the window, Plaintiff started falling to his right to the floor in the direction of Plaintiff's grandchildren's toys and an antique sewing machine. As Plaintiff was falling, Ross, with great force, intentionally shoved Plaintiff's head into the wrought iron base of the antique sewing machine, creating a huge welt on Plaintiff's right forehead. He got on top of Plaintiff and started beating Plaintiff's head with his fists, multiple times. Plaintiff begged over and over for Ross to stop beating him. Terri said nothing. Terri made no effort to intervene. After being hit in the head at least 20 times by Ross' fists, Plaintiff blacked out.

53.     Plaintiff was unconscious for more than five minutes. Sometime during Plaintiff's unconsciousness, Terri and Ross called the Roberts County Sheriff's office. The next thing Plaintiff remembered was someone saying, "get up, get up" as Plaintiff slowly regained consciousness. It was one of the deputies named as a defendant. Plaintiff does not remember, after watching the body cam video, the deputy telling him to stay down. Plaintiff got up and blood was everywhere.

54.     Plaintiff remembers demanding for the deputies to charge Ross with assault.  It was then that the deputies threatened to place Plaintiff in handcuffs and arrest him.  The deputies' suggested Plaintiff was the aggressor and he had committed assault.  One deputy then said that Plaintiff had no say in who is arrested or charged, the State of South Dakota decides.

55.     Plaintiff was not aggressive toward either Ross or Terri.  He never has been.  Nor did Plaintiff defend himself.  The deputies agreed in the body-cam video that the notion of a 65-year-old elder charging the 300-pound Ross was highly unlikely.  In fact, they said it was "weak".  Ross told them he was in fear of his life, yet he said in the video he could hurt Plaintiff, a 65-year-old man, at any time if he wanted to.

56.     No evidence pointed to either Ross or Terri being harmed or threatened in any way.  The deputies also agreed it was a mandatory arrest but did not make an arrest.  The deputies were required to arrest Ross according to the Domestic Violence Statute.  SDCL 25-10-36.  Plaintiff requested they do so. The deputies said Plaintiff had no say in it.

57.     Terri and Ross corroborated their stories within 5 minutes before the deputies arrived.  Again, at this time Plaintiff was knocked out cold.  Ross initiated the first contact outside with the deputies, telling them his story.

58.     The deputies asked Terri and Ross their versions of the events, requesting that they each go outside and tell them.  The deputies never asked Plaintiff a single question about what happened.

59.     Plaintiff did not refuse medical care, as claimed in Deputy Angerhofer's report.  To the contrary, Plaintiff accepted medical treatment from Jeff Pagler, who arrived with the ambulance, and whom Plaintiff knows of, and Ross knows very well.  Jeff Pagler is Chief of the Sisseton Fire Department, which Ross was a member of, while he was on the Sisseton-Wahpeton Tribal Police Force for 10 years.

60.    Ross should also have been arrested for DUI by the deputies. By telling the deputies he only had two beers, he made a false statement in addition to the assault. As Terri and Ross walked out the door, Ross turned to Plaintiff and said, "I'm sorry, Dad".

61.    Plaintiff refused to go to the Emergency Room at Sisseton because he was embarrassed by what Ross did to him. Plaintiff knows many of the people working at the hospital emergency room. Theresa Thode, mother of Plaintiff's former son-in-law, Steven Smith, is a Sisseton ER nurse. Smith works for Terri and Plaintiff in their business.

62.    Apparently, while driving to Fargo, Plaintiff pulled into the Wahpeton North Dakota truck weigh station, and it was as if Plaintiff woke up. Plaintiff did not know exactly where he was. As he recovered his senses, he called his daughter, Christie, again. Plaintiff continued his drive and got lost in Fargo trying to find his daughter's home. Plaintiff has been to Fargo literally many times; this is the first time he became lost.

63.    When Plaintiff arrived in Fargo, his daughter, Christie, now a registered nurse, insisted Plaintiff seek medical attention at Sanford Emergency Room later that evening. She was extremely concerned about bleeding of the brain. The doctor ordered a cat scan done to determine if Plaintiff had bleeding of the brain. He did not, but Plaintiff had a broken cheek bone, fractured spine; multiple lacerations and multiple stitches were done. The bill was $11,415.00. Plaintiff continues to suffer headaches and pain from being knocked out. The left side of Plaintiff's neck is constantly in pain.

64.    After the assault and the ER visit, Plaintiff stayed with his daughter, Christie, in Fargo, until Sunday September 26, 2021. Plaintiff returned to his home on that evening. Terri was present and at no time did she suggest that she was ever scared of Plaintiff. Terri and Plaintiff interacted well until Terri grabbed Plaintiff's phone on Wednesday evening, September 29, 2021, and tried to access it. Terri was unable to access the phone with the old access code

10

and demanded Plaintiff's new 4-digit access code on his iPhone.  Plaintiff had had his daughter

change it to protect the photos he had taken of himself on the evening of the September 21, 2021

assault.  On September 21, 2021, the deputies did not take any photos of Plaintiff, but Plaintiff's

condition is shown by the photos attached as Ex. A.

      65.     The next morning, Thursday, September 30, 2021, Plaintiff drove to Fargo to

have the stitches removed from the beating by Ross on September 21, 2021.  That afternoon,

about 3:00 p.m., after returning home, Plaintiff tried to enter his home.  Terri had locked him out.

Normally, Plaintiff and Terri would lock the doors and access the home through the garage door,

but she had unplugged it.  Plaintiff accessed his home with his key in the back door.  Terri came

home at about 5:00 p.m. and Plaintiff did not let her in, even though she kept demanding entry.

She banged on the door and threatened Plaintiff with calling the Sheriff if he did not let her in;

she was obviously unafraid.  After about 15 minutes of yelling and knocking, Terri turned and

headed to her car.

      66.     Earlier, on that Thursday, September 30, 2021, about 2:00 p.m., Terri had filed a

Petition and Affidavit for a Protection Order (Domestic Abuse) against Plaintiff, claiming she

was scared of him on the evening detailed above, September 21, 2021, that both Terri and

Plaintiff called Ross and asked him to come to their home to "mediate" an argument, that

Plaintiff charged Ross and Ross "restrained" him, but never mentioning the injuries, cuts and

bruises Plaintiff received.  She filed an affidavit stating she was fearful of Plaintiff, and then

demanded to get into the house, knowing Plaintiff was there.  The Court entered an Ex Parte

Temporary Order for Protection on October 1, 2021.  ("TPO").  Multiple phone calls went back

and forth on October 1, 2021, between Sheriff Tyler Appel and Ross Torgerson before and after

the deputies served the TPO on Plaintiff that Friday afternoon.

67.     On Friday, October 1, 2021, sometime around or after 2:00 p.m., two Roberts County deputies, and Sheriff Appel, came speeding down the driveway and into Plaintiff's yard. The deputies demanded Plaintiff open the door and threatened to knock it down if he did not open.  Plaintiff was served with the TPO and was forced to immediately leave his home.

68.     On October 27, 2021, a hearing was held for a permanent protection order against Plaintiff, the victim, who appeared *pro se*.  The only document Terri and her attorney presented to the Court, in addition to Terri and Ross' false testimony, was the intentionally false and inaccurate report by Deputy Angerhofer, concealing multiple material facts.  The Permanent Order for Protection was granted, effective from October 27, 2021 through October 27, 2023.

69.     On October 27, 2021, at the Protection Order hearing for Ross' mother, Terri had the opportunity to testify that Ross was justified in beating Plaintiff because she was in fear, but she did not.

70.     No Findings of Fact and Conclusions of Law were entered in support of the Order, contrary to South Dakota Supreme Court precedent.

### FIRST CAUSE OF ACTION:
### CIVIL CONSPIRACY
### All Defendants

71.     Plaintiff realleges paragraphs 1-70 as though set out in full.

72.     To prove civil conspiracy under 42 U.S.C. § 1983 and § 1985, Plaintiff must show (1) action by two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action to be taken; (4) commission of one or more unlawful overt acts; and (5) damages as the proximate result of conspiracy.

73.     The persons who engaged in this civil conspiracy to deprive Plaintiff of his substantive and procedural rights to due process of law, and his liberty interest in a fair and complete investigation, are Sheriff Appel, Deputies Angerhofer and Bowsher, and Terri and

Ross Torgerson.  Because Defendants Appel, Angerhofer and Bowsher engaged in the

conspiracy in both their individual and official capacities, Roberts County is also liable for the

damages caused by the conspiracy.

74.      The objects of Defendants' conspiracy were (a) to shield Ross Torgerson from

arrest and prosecution for his aggravated assault (a Class 3 felony – SDCL 22-18-1.1(1) and (4))

upon Plaintiff; (b) to facilitate Terri Torgerson receiving an Order of Protection to which she was

not entitled; (c) to aid Terri Torgerson in the pursuit of a divorce against Plaintiff, including

possession of the marital home; (d) to shield Deputies Angerhofer and Bowsher from

disciplinary action for their incompetent and dishonest investigation and reporting of the events

of September 21, 2021; (e) to shield Defendants Angerhofer and Bowsher from disciplinary

action for their intentional failure to arrest Ross for DUI on September 21, 2021; and (f) to

continue the close personal friendship between Ross Torgerson and Sheriff Appel.

75.      The meeting of the minds on the objects of the conspiracy, described in paragraph

74, above, was formed between Defendants Ross and Terri Torgerson immediately upon Plaintiff

being rendered unconscious, among Terri and Ross Torgerson and Deputies Angerhofer and

Bowsher while the deputies were interviewing Ross and Terri in lieu of rendering aid to Plaintiff,

or interviewing him, and subsequently affirmed by Sheriff Appel.  The course of action to be

taken was agreed upon by all Defendants during the days between September 21, 2021, Terri

obtaining the October 1, 2021 TPO, and the protection order hearing on October 27, 2021, as

well as the subsequent enforcement of the TPO and Order of Protection.

76.      The Angerhofer police report omits, conceals, and suppresses crucial material

facts and is written in a way that skews the provocation in Plaintiff's direction, as if Plaintiff was

the instigator, all in violation of SDCL 25-10-36.  The deputies began the civil conspiracy when

they interviewed Ross and Terri and initially threatened to arrest Plaintiff for assault.

77. The overt acts undertaken by Defendants included:

(a) Ross lying to Deputies Angerhofer and Bowsher when they arrived at the scene of the assault on September 21, 2021.

(b) Terri not telling the truth to the two deputies at the scene on September 21, 2021.

(c) Deputy Angerhofer writing a sloppy, misleading report of the September 21, 2021 events, despite the serious injuries inflicted upon Plaintiff, which exhibited an intentional failure to investigate which shocks the conscience, and was in violation of SDCL 25-10-36;

(d) Deputy Bowsher wrote no report at all, contrary to normal law enforcement standards, and SDCL 25-10-36, which demonstrated a deliberate and intentional failure to investigate, and a deliberate indifference to proper investigation, which shocks the conscience;

(e) Both deputies purposely ignoring obvious evidence of Ross' guilt, namely the severe beating Ross administered to Plaintiff, as well as Ross' .091 BAC.

(f) Sheriff Appel cooperating with and covering up the overt acts described in (a)-(e), and the reckless investigation resulting from failing the statutory mandate to "pursue and apprehend all felons", SDCL 7-12-1, and failing to discipline the deputies for their incompetent investigational reporting.

(g) Ross and Terri Torgerson fraudulently participating in the protection order proceeding which resulted in the October 1, 2021 TPO and the Order of Protection dated October 27, 2021.

(h) The deputies asking, in order for them to drive, if Plaintiff and Ross would take a breathalyzer. Plaintiff blew a .017 and Ross blew a .091, as documented in the body cam video, but no report of this was made by either deputy. The BAC result of .091 for Ross occurred more than an hour after he arrived at the Torgerson home, even though Ross told the deputies he only

14

drank two beers after he arrived, and none before.  Plaintiff was allowed to drive despite his serious head injuries.

(i)    Not arresting Ross for DUI was an intentional omission, and a suppression of evidence by the deputies in violation of Plaintiff's Due Process rights.  Ross lied to the deputy earlier in the body camera footage when asked how much he had to drink.

(j)    The deputies ignored the obvious damage to Plaintiff's face, and contusion on Plaintiff's right forehead, which was reported in the ambulance report; the Angerhofer report states, "Terri stated Ross pushed Leslie away from him and he fell *backwards* and hit his head on the table".  (Emphasis added).

(k)    Sheriff Appel refused for weeks to serve South Dakota divorce papers on Terri Torgerson in order to keep her divorce action, which she previously initiated, in Tribal Court, despite the mandate of SDCL 7-12-1, for the purpose of Terri receiving more favorable treatment in Tribal Court.

78.    Plaintiff was damaged by this civil conspiracy by not receiving proper medical care, immediately, on September 21, 2021; by being forced from his home by the Ex Parte Temporary Order of Protection and later the Permanent Order of Protection by being prevented from managing the Taco John's franchise in Montana from Plaintiff's home, where most of the business records were maintained; by the anxiety and emotional distress resulting from the conspiracy; and by the damages described in further detail in paragraphs 90-94 and 104-107.

79.    Plaintiff's right to be free from the constitutional violations at the heart of this civil conspiracy, Plaintiff's right to substantive due process, Plaintiff's right to procedural due process, and Plaintiff's liberty interest in a fair and complete investigation, were clearly established in September and October, 2021.

## SECOND CAUSE OF ACTION:
### BATTERY
### Defendant Ross Torgerson

80.    Paragraphs 1-79 are realleged as though set out in full.

81.    On September 21, 2021, Ross Torgerson intended to cause a harmful and offensive contact with Plaintiff, and he made that harmful and offensive contact with Plaintiff, by severely beating him senseless and unconscious.

82.    Defendant Torgerson's battery of Plaintiff severely injured Plaintiff, caused a broken cheek bone, a T1 spinous process fracture, and multiple cuts and bruises, as shown by the photos attached as Ex. A, which photos were taken September 21 and 26, 2021, after the battery. Plaintiff incurred medical bills, an ambulance bill, and has ongoing headaches, and constant pain in his neck.

## THIRD CAUSE OF ACTION:
### DENIAL OF SUBSTANTIVE DUE PROCESS

83.    Paragraphs 1-82 are realleged as though set out in full.

84.    Section 1983 liability for a constitutional violation may attach to a county if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690-91 (1978), *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989).

85.    To state a claim for a deliberately indifferent failure to train or supervise, Plaintiff must allege that (1) the County's training or supervisory practices were inadequate; (2) the County was deliberately indifferent to the rights of others in adopting them, such that the failure reflects a deliberate or conscious choice by it; and (3) an alleged deficiency in the County's training or supervisory procedures actually caused Plaintiff's injury. *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (quotation and citation omitted).

86.    The Roberts County and Sheriff Appel's inadequate training and supervisory practices are shown by the incomplete and dishonest report of the September 21, 2021 incident submitted by Deputy Angerhofer, the failure by Deputy Bowsher to make any report whatsoever, and Sheriff Appel's intentional acceptance of these failures by Angerhofer and Bowsher, due to his deliberate indifference and purpose to protect his close friend, Ross Torgerson, all of which demonstrates a deliberate or conscious choice.

87.    The Roberts County and Sheriff Appel's inadequate training and supervisory practices are also shown by Deputy Bowsher's failure to make any report whatsoever regarding the serious beating inflicted upon Plaintiff on September 21, 2021, and Sheriff Appel's intentional acceptance of Bowsher's failure, due to Appel's deliberate indifference to proper law enforcement procedures and purpose to protect his close friend, Ross Torgerson, also demonstrating a deliberate and conscious choice.

88.    The three law enforcement officers' failure to investigate the attack upon Plaintiff by Ross Torgerson violated Plaintiff's liberty interest, and was so intentional and deliberately indifferent as to shock the conscience.

89.    The law enforcement officers' intentional failure to investigate the September 21, 2021 attack upon Plaintiff, and their deliberate indifference to Plaintiff's rights, are also illustrated by the officers taking no action to arrest Ross for DUI, knowing that he drove to Plaintiffs home and that he had a .091 BAC.

90.    Plaintiff was damaged by the officers' reckless investigation of the September 21, 2021 beating inflicted upon Plaintiff, by the Angerhofer report being submitted as evidence at the October 27, 2021 protection order hearing, by there being no mention in the Angerhofer report of Plaintiff's injuries, and no report by Bowsher whatsoever, all of which would have been critical evidence at the protection order hearing.   Instead, Plaintiff was evicted from his home,

publicly embarrassed by that eviction, and deprived of the use of his business records, causing

him extreme anxiety and emotional distress.  Plaintiff was, and remains, publicly embarrassed by

that eviction, and was deprived of access to and use of his business records.

91.     An unconstitutional governmental policy can be inferred from a single decision

made by the highest official setting policy in that area of the government's business, in this case,

Sheriff Appel.

92.     In this case, it was not a single decision, but multiple decisions by Appel,

extending over time, (a) which exhibited complete indifference to his deputies' sloppy and

dishonest investigation and reporting of the events of September 21, 2021; (b) to conspire with

Ross and Terri to facilitate Terri's receipt of the TPO and the Order of Protection; (c) to ignore

Ross' assault and battery of Plaintiff and Ross not being arrested for DUI after showing a PBT

result of .091; (d) refusing to make service of process on Terri for Plaintiff's state court divorce

pleadings; and (e) Appel's failure to adopt Sheriff's department policies which would have

prevented the dishonest and incompetent investigation of the September 21, 2021 events.

93.     Plaintiff was damaged by being summarily and fraudulently evicted from his

home, and deprived of the use of his business records, resulting in homelessness, anxiety and

emotional distress, and suffering anxiety and emotional distress from law enforcement's refusal

to take any action regarding the severe beating he received on September 21, 2021, the Sheriff's

conspiratorial conduct with the other defendants, and the Sheriff's refusal to complete service of

process on Terri of Plaintiff's Summons and Complaint for divorce in State Court.

94.     Plaintiff has also been damaged by the need to pay rent for an apartment, instead

of living in his own home, which rent now totals $8,000.00, and is continuing.

## FOURTH CAUSE OF ACTION:
## DENIAL OF PROCEDURAL DUE PROCESS

95.     The allegations of paragraphs 1-94 are realleged as though set out in full.

96.     Plaintiff was denied procedural due process guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution, and South Dakota Constitution Article VI, § 2, by the reckless investigation and intentional conduct described in ¶¶ 54 – 60 and 73 – 77, above, which prejudiced Plaintiff at the October 27, 2021 Protection Order hearing.  The failure to investigate the September 21, 2021 events, and the failure to fairly report those events also constituted a pre-deprivation process which led to the issuance of the October 1, 2021 *ex parte* TPO.

97.     Plaintiff was damaged by the officers' reckless investigation, by the Angerhofer report being submitted as evidence at the October 27, 2021 Protection Order hearing, by there being no mention in the Angerhofer report of Plaintiff's injuries, and no report by Bowsher whatsoever, which would have been critical evidence at the Protection Order hearing, resulting in Plaintiff being evicted from his home, costing him rent and other expenses, and deprived of access to his business records, causing him extreme anxiety and emotional distress.

## FIFTH CAUSE OF ACTION:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

98.     Paragraphs 1-97 are realleged as though set out in full.

99.     To prove intentional infliction of emotional distress, Plaintiff must prove (1) acts by the Defendants amounting to extreme and outrageous conduct; (2) intent on the part of the Defendants to cause the Plaintiff severe emotional distress (3) the Defendants' conduct was the cause in-fact of Plaintiffs distress; and (4) the Plaintiff suffered an extreme disabling emotional response to Defendants' conduct.

100.    The conspiracy by all Defendants, as described in paragraph 74, above, amounted to extreme and outrageous conduct, as shown by the overt acts described in paragraph 74, and the violations of state statutes.

101.    Defendants' conduct was intentional. Ross and Terri Torgerson lied to the investigating deputies on September 21, 2021 and they lied in Court on October 27, 2021. Terri lied in her September 30, 2021 application for the TPO. Deputies Angerhofer and Bowsher intentionally wrote a misleading and incomplete report, or no report, respectively, regarding the events at Plaintiff's home on September 21, 2021, and continued to cover up the truth thereafter. Sheriff Appel intentionally disregarded the deputies' sloppy and misleading reporting about September 21, 2021, exhibited deliberate indifference to the deputies' conduct, and coordinated with Ross and Terri Torgerson to facilitate Terri's pursuit of the fraudulent Protection Order. Sheriff Appel also refused to complete service of process of Plaintiff's state court Summons and Complaint for divorce, contrary to SDCL 7-12-1, in a coordinated effort with Ross and Terri to keep Terri's divorce action in Tribal Court, which they thought would be more advantageous to Terri because she is an enrolled member of the Sisseton-Wapheton Tribe.

102.    Defendants' conduct combined to cause Plaintiff severe emotional distress from the severe beating he took; being summarily removed from his home by a fraudulent TPO and, later, a fraudulent Permanent Order of Protection; being deprived of access to his business records; by the dishonest and conspiratorial conduct of the law enforcement officers; and by the extreme public embarrassment at having the Protection Orders issued against him.

103.    The emotional distress experienced by Plaintiff has been disabling for him, causing a loss of sleep on a regular basis, depression, an inability to focus on his business, and anxiety when appearing publicly in the small town of Sisseton, South Dakota.

## DAMAGES

104.    The U.S. Supreme Court has recognized that compensation under a § 1983 claim is available when such actions are found to have been a violation of Constitutional rights and to have caused compensable injury.  If a person is derived of his constitutional rights under color of state action, the offender is liable for any consequential damages.  42 U.S.C § 1983.

105.    The U.S. Supreme Court has also recognized punitive damages under a § 1983 claim are available against municipal officials when an official is sued in his or her personal capacity.  *Hafer v. Melo*, 502 U.S. 21, 22-22 (1991).  "[I]t is enough to show that the official, acting under a color of state law, causes the deprivation of a federal right." *Id.* at 25.  Defendants Appel, Angerhofer and Bowsher are personally liable for damages caused to Mr. Torgerson for their actions.  Their conduct was motivated by evil motives, and were done with reckless and callous indifference to Plaintiff's federally protected rights.  These defendants are officials for the County of Roberts, acting under color of state law, caused the deprivation of Mr. Torgerson's federal rights by wrongfully investigating and reporting the September 21, 2021 assault on Plaintiff without due process of law, in violation of the Fifth and Fourteenth Amendments to the U.S.  Constitution.

106.    Punitive damages are also appropriate against Ross Torgerson for his intentional battery of Plaintiff and against all individual Defendants for their intentional infliction of emotional distress.

107.    Because the conduct described in the Complaint is violation of the United States Constitution, Mr. Torgerson is also entitled, as prevailing party, to an award of costs and attorney fees incurred herein, pursuant to 42 U.S. C § 1988.

WHEREFORE, Plaintiff prays for Judgment as follows:

1.       Against all Defendants for civil conspiracy to deny Plaintiff of his constitutional rights, and for intentional infliction of emotional distress;

2.       Against Ross Torgerson for battery, including an award of damages for medical bills, $12,000.00, and an ambulance bill, $200.00, plus the ongoing pain, suffering and disabilities inflicted upon Plaintiff on September 21, 2021, as well as punitive damages;

3.       Against Defendants Roberts County, Tyler Appel, Zachary Angerhofer and Wesley Bowsher for denial of Plaintiff's substantive and procedural rights to due process of law; also against Terri Torgerson and Ross Torgerson for denial of his right to procedural due process of law;

4.       Against all Defendants for damages to Plaintiff's reputation and for anxiety and emotional distress;

5.       Against all individual Defendants, punitive damages for the intentional infliction of emotional distress;

6.       Against all Defendants for damages in the form of rent and other expenses resulting from the wrongful eviction of Plaintiff from his home; and

7.       For an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

Dated this _9th_ day of June, 2022.

HAGEN, WILKA & ARCHER, LLP

By _Thomas K Wilka_

Thomas K. Wilka
600 S. Main Avenue, Suite 102
P.O. Box 964
Sioux Falls, SD  57101-0964
(605) 334-0005
Attorneys for Plaintiff

**PLAINTIFF DEMANDS TRIAL BY JURY
ON ALL ISSUES HEREIN**

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

TORGERSON, LESLIE

**DEFENDANTS** ROBERTS COUNTY, S.D.; APPEL, TYLER; ANGERHOFER, ZACHARY; BOWSHER, WESLEY; TORGERSON, ROSS; and TORGERSON, TERRI

**(b)** County of Residence of First Listed Plaintiff    Roberts
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Roberts
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Thomas K. Wilka, Hagen, Wilka & Archer, P.O. Box 964, Sioux Falls, SD  57101; 605-334-0005

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation - Transfer ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Section 1983 and 1985

Brief description of cause:
Conspiracy to deprive Plaintiff of constitution rights; state law claims

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
Unspecified

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions:)*

JUDGE _____    DOCKET NUMBER _____

DATE  6/9/2022

SIGNATURE OF ATTORNEY OF RECORD  *Thomas K. Wilka*

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____